Judge Coaxter.
Iu the case of Eppes v. Randolph,(a) Judge Pendxeton, in delivering the opinion of the court, lays it down as a general doctrine, “ That where a creditor takes no specific lien, he trusts his debtor upon the credit of his property generally, and on a confidence that he will not lessen it to his prejudice. He has, therefore, a claim upon all that property whilst it remains in the hands of the debtor, and may pursue it into the hands of a mere volunteer; but not having restrained the debtor’s power of alienation, if he, or his volunteer, convey to fair purchasers, they, having the law, and equal equity, will be protected against the creditor.” The only question is, whether, in this case, as in that, the appellants are such fair purchasers for valuable consideration.
There can be no doubt whatever but that this deed is good, against creditors, as to the wife and the issue of the marriage. The only question is, whether the children born before the marriage are mere volunteers, and the deed, as to them, Void against creditors.
As to this point,-the case has some analogy to the case of a man, or woman, about to contract a second marriage, and making a provision for the children of a former. In such cases, very strong authority, I believe, *369 ean be produced to prove that those children are not mere volunteers.(a)
This, however, is a stronger case. These are the children of both the contracting parties. They were bound as well by the ties of affection, as by those of morality and justice, not only to provide a comfortable support for their innocent offspring, but to raise them to that station in society in which the laws of their country, upon the marriage of their parents, places them: and, in this point of view, I cannot perceive the difference between the situation of these children, and a child, in England,, Who is born a week after marriage.
That child is not (in rerum natura) a child of the marriage, yet he is so by the laws of his country, and would be a purchaser for valuable consideration under a marriage settlement. In this case, too, the marriage, under the influence of our Jaws, makes these the legitimate children of the parties contracting. And, in this particular case, nothing but marriage was wanting; inasmuch as Coutts had always recognised them as his children; they bore his name, and are called his children in the marriage settle* ment.
I am therefore of opinion that they were not volun* teers, but purchasers for a valuable consideration. But, it may be said, that a deed may be fraudulent and void under the statute, though made upon a good and mérito* rious consideration; nay, that even valuable consideration will not avail, unless it be also bona Jide.(b) And to avoid the deed on this ground, it is charged in the bill, that Coutts conveyed all his property in trust, &c.
The amended bill, however, admits that the party, on the day he gave his bond for the debt, executed a mortgage for a moiety of 7,000 acres of land in Kentucky to secure it.
If this land was not considered sufficient for that pur* pose, why did not the party then take additional security ? But, in addition to this, Coutts died possessed of *370 a considerable real estate in lots and lands in Manchester and Henrico, and his executor is now in pursuit of a large debt, which may be recovered.
I will not pretend to say how far the neglect of the creditor to pay the taxes on the lands in Kentucky might affect him, in a controversy with the mortgagor, were they, the only parties before the court; but, surely, there is a wide difference between the case, as it would stand between those parties, and the case where the mortgagee suffers the mortgaged premises (which may have been a sufficient security) to become forfeited, and then comes into a court of equity to set aside the legal rights of the appellants; even admitting that they are mere volunteers.
In the case of Eppes v. Randolph, the court notice the improper conduct of the plaintiff in not proceeding, in time, to charge the lands in the hands of the devisees, which he might have charged, in exoneration of the purchasers.
In this case there are not only lands in the hands of devisees, which may yet be charged, but I am by no means certain that the Kentucky lands are entirely lost. The last sale made, probably in 1804, or 1805, (for it was for the taxes of 1802 and 1803,) was of 5,355 acres, which was sold to Philip Buckner. The patent was originally granted to him; and it is not improbable that he was the cotenant of the other moiety, equally bound to pay the taxes, and now holds the land in trust for the ere-' ditor, if he would take the trouble to look after it.
The decree must, therefore, be reversed ; and, as the amended bill mentions the mortgage, and there is a prayer for general relief, the cause must be sent back, to be proceeded in to a foreclosure of the mortgage; with liberty to the plaintiff to amend his bill, so as to pursue the property devised into the hands of the devisees ; unless, indeed, the consent of the parties, before the commissioner, (as stated in his report,) would have authorized a decree against them for a sale of the property devised, *371 and a foreclosure of the mortgage; in which case, this court might at once pronounce the decree.
Judge Cabell.
The appellants, claiming under the marriage settlement, must be considered either as volunieers, or as purchasers for a valuable consideration. Admitting them to be volunteers, the settlement will not be void, even as to creditors, unless the creditors cannot be otherwise satisfied. For, although the maxim is, that a man must be just before he is generous, yet an act that is merely generous, or voluntary, can be set aside in favour of those only who are injured by it. He who asks equity, must first do equity. Greenhow should have gone against the other estate of Coutts before he invaded the settlement; and even common justice required that he should resort to that fund which had been set apart, with his own consent, for the payment of his debt, before he disturbed arrangements made in favour of others, for whom Coutts was, at least, morally bound to provide. There is nothing like actual fraud proved in this case. It does ~>ot appear that Coutts owed any other debt than that to Greenhow: and for the payment of that debt, he conveyed, before the execution of the marriage settlement, property which is admitted to have been amply sufficient for the purpose. If that property has been lost in consequence of the non-payment of taxes, if will be a question for subsequent inquiry on whom that loss shall fall; at least, so far as relates to the payment of Green-how’s debt.
But the appellants are purchasers for a valuable consideration s and, as such, will hold the property settled on them, even against all creditors. So far as relates to Mrs. Coutts, it seems difficult to imagine on what ground a doubt could have been founded. That marriage is a valuable consideration seems to be so firmly established as a general principle, as to preclude the necessity of referring to authorities. I will, however, barely mention *372 the case of Eppes v. Randolph. But the chancellor, in declaring the settlement void, must have gone, I presume, on the idea that the cohabitation of the parties, before the marriage, will take this case out of the general rule. This iá the first time, so far as I have observed, that this exception has been contended for, either in this country or in England. Supported neither by authority, nor reason, it cannot be admitted. I shall not be the apologist of the conduct of the parties before their marriage. They have, however, legitimated the innocent offspring of their criminal intercourse, and have made to society all the atonement in their power; and I am unable to perceive any reason, in justification of marriage settlements generally, which does not apply to this in particular. If the consideration of the marriage be valid as to the parties to the marriage, it would undoubtedly be equally so, as to the issue of the marriage ; for there has never been an attempt to distinguish between them. Nor does our act of assembly make any difference between children, born (as in this case) before the marriage, but recognised hy the father, and those born after it. As far as relates to the husband, they are the children of the marriage; for, without the marriage,,they would not be considered as his children/, By the common law, a child begotten before, but borti after marriage, is legitimate, and would certainly be entitled to the benefit of a settlement providing for the Issue of the marriage; and our act of assembly has placed the children, in this case, on the same ground. I am therefore of opinion that the decree of the chancellor, so far as it affects the marriage settlement, is erroneous, and ought to be reversed; and that the cause be remanded for farther proceedings in relation to the property not contained in that settlement.
Judge IJrooke.
It does not appear by any thing in the record, that it was the intention of the parties, hy *373 executing the marriage settlement, to commit a fraud on the creditors of Reuben Coutts. On the contrary, it does not appear that there were any debts except the one, the ' payment of which was provided for by the mortgage of the Kentucky lands.
With respect to the want of personal inducement to the marriage, if it existed, as seems to be supposed by the chancellor, I am not prepared to say that fraud would be deducible from that circumstance. The case appears to me (with the exception of a single circumstance attending it) to present the naked question, whether a marriage settlement, intended to provide for the husband and wife and their children, is a valid contract against creditors. In the case of Eppes v. Randolph, on a question between creditors and those claiming under the marriage articles, it was decided by this court that the settlement was valid against creditors, and that those claiming under it were purchasers, and not volunteers; but it is relied on, in this case, that, though the settlement, as to the husband and -wife, is valid, within the rule laid down in the foregoing case, yet that, as to the children born before the marriage, the consideration of the contract cannot enure to them, and that they must take as volunteers, and not as purchasers.
By the common law, base begotten children, if not base born, are legitimated by the marriage of the parents.
By the civil law, the marriage of the parents legitimated base born children. Our act of assembly on this subject has adopted the rule of the civil law, with this addition, that the children must be recognised by the father to be his. This was obviously to remove the objection of those who contended for the superiority of the common law rule over the rule of the civil law, (in this,) that, by the latter rule, the husband by the marriage was compelled to father children not acknowledged to be his own, and, of consequence, the motive to marry would not be so strong as under the rule of the common law. *374 The case now under consideration is, completely, as to this point, within the act of assembly before mentioned; the children, though base born, are legitimated by the marriage of the parents, and the recognition of them, as his own, by the husband, both before and after the marriage. Upon this view of the subject, I cannot perceive the accuracy of that reasoning which would put them in a worse situation than that of those born after the marriage. It cannot be founded on any thing, in the moral condition of the parties, to invalidate the contract. It never has been contended, that I know of, that a base begotten child could not be provided for by marriage settlement, to the exclusion of creditors, by the principles of the common law. No case to that effect has been produced; and I can see no difference in reason between a provision for a base begotten child, legitimated by the marriage of the parents according to the rule of the common law, and for base-born children legitimated by the marriage of their parents under the rule of our law. The policy is the same, though, perhaps, not so strong in the last case as in the first.
The time of the marriage must be unimportant. Upon this point, then, I am of opinion the chancellor erred, and that the decree should be reversed, and this cause sent back to the court of chancery for further proceedings to be had in relation to the property of Reuben Coutts, not comprehended in the marriage settlement; the claim to which not having been charged in the bill, nor controverted in this case, I give no opinion respecting it.
Judge Fleming.
On an attentive examination of the record, it appears to me that the decree is erroneous, and that the bill ought to have been dismissed with costs. The decree is expressly founded on an opinion that the deed of marriage settlement, in the proceedings mentioned, was fraudulent as to the creditors of Reuben Coutts. To *375 show the grounds of a contrary opinion, and my reasons for thinking the bill ought to have been dismissed, I must take a short view of the facts and circumstances as they appear on the record.
Reuben Coutts being indebted to Hicks & Campbell, on the 29th of August, 1799, executed to them three notes, or single bills, under seal, for 1547. 8s. 4d. each, payable respectively, on the first days of September, 1800, 1801, and 1802, with interest from the dates; which bills were immediately assigned to George Greenhoxv, with recourse on the assignors, in case of insolvency. On the same day Coutts executed a mortgage to George Greenhoxv, the assignee of the bills, for a moiety of a tract of 7,000 acres of land, on Locust Creek, north fork of Licking, in the state of Kentucky, which mortgage was duly recorded in the court of appeals in the state of Kentucky, the 29th of fune, 1800. In the years 1802 and 1803, Greenhoxv instituted suits, and obtained judgments against Coutts on those bills; and issued writs of fieri facias thereon, which were returned “ no effectsand, in fitly, 1806, those judgments were assigned to fames Greenhow, the complainant in this suit: who, in his original bill, charges that Coutts, being indebted, not only to George Greenhoxv and himself, but also to various other persons, on the 10th of September, 1799, executed, to Samuel M'Craxv and others a conveyance of his whole estate, real and personal, under the guise and pretence of marriage articles, &c. when it appears by the record that Coutts was not indebted to him, but by the assignment of the judgment aforesaid, which took place near seven years after the date of the marriage settlement. In his amended bill, he charges that the said Reuben Coutts executed a mortgage to George Greenhoxv upon some lands, alleged to belong to him in the state of Kentucky, to secure the payment of the debt; and further charges, that Coutts executed the mortgage, merely as a colour to justify the fraud, then meditated, of conveying away all the property he had; that being informed of it, he made inquiry respecting *376 the same, (having understood that to be the only objection to paying the debt out of the pretended trust estate,) and has been informed, believes, and therefore charges, that Reuben Coutts having neglected to pay the taxes on the said land, it was sold for the same, about the time of executing. the said mortgage, of which the said Coutts had notice; and George Greenhow, in his answer to this amended bill, says/4 that some time after the execution of the said mortgage, he, upon inquiry, discovered that the lands had been sold for the payment of taxes; and understood the sale happened some time in, or about, the year 1799: and, finding the mortgage afforded him no security, he instituted the suits on the single bills, and recovered the judgments referred to by the plaintiff.” It seems that both the plaintiff and himself (whose duty it was to pay particular attention to the important subject) had been most egregiously misinformed, from whatever source their information might have been derived; for it appears, by a certificate of George Madison, auditor of public accounts in the state of Kentucky, that,' on the 11th day of November, 1802, (upwards of three years after the date of the mortgage,) 750 acres, part of the said land, were sold, for the tax of 1800, to Samuel C. Hall and Anthony Foster, for the sum of 8 dollars and 75 cents. At an after date, (but when is not stated in the certificate,) 875 acres more were sold (supposed to be for the tax of 1801) to J. i¡? L. Henderson £s? Co. for the sum of 7 dollars and 81 1-2 cents. And 5,355 acres, the remainder of said undivided 7,000 acres of land; were sold for the taxes of 1802 and 1803, to Philip Buckner, (who, it seems, was equally interested with Coutts in the said 7,000 acres,) for the sum of 19 dollars and 31 cents. The precise time of this latter sale is not stated; but it could not have been before the year 1804; (long after the judgment had been obtained on the notes;) for the sales of lands in Kentucky for taxes, are never made sooner than October next succeeding the year after *377 which they become due. Thus did George Greenhow, the mortgagee, (in whom the legal title to the land tested, no interest remaining in Cotitts, except his equity of redemption on paying the debt with interest thereon,) suffer this valuable tract of land (a moiety of 7,000 acres) to be sold for about half a cent per acre, when less than 36 dollars, divided into four equal annual payments, would have saved the whole undivided 7,000 acres! And fames Greenhow, the assignee of the judgments, (standing on no higher ground than George Greenhow occupied,) comes into a court of equity to annul, and set aside, as fraudulent, a marriage contract, fairly and bona fide made, upon one of the most 'important and valuable considerations known in civil society. Goutts, after having lived many years with fane New, and having several children by her, born out of wedlock, took the laudable resolution to marry her; and, on the 10th of September, 1799, (12 days after the date of the notes and mortgage,) executed the marriage settlement, in the proceedings mentioned; and on the 17th day of the same month, intermarried with the said fane New; and thereby legitimated his said children, five in number; which I consider a very laudable and meritorious transaction, especially as he had given ample security for the debt, now sought to be made out of the trust estate, or marriage settlement; which security was lost, as I conceive, through the gross negligence of the mortgagee, as it may be fairly presumed that the taxes of the land had been regularly paid, down to the date of the mortgage; it appearing by the record, that the first sale of the land for taxes, was for the tax of 1800, though not made until the 11th day of November, 1802. Admitting, however, that the mortgagee was no way responsible for the loss of the mortgaged land, the deed of marriage settlement, bona fide made, on a valuable consideration, was, nevertheless, valid, both in law and equity, and ought to be supported. See the decree in the case of Eppes v. *378 Randolph, 2 Call, 188. where the deeds to Richard Ran* doph, jun. and to David Meade Randolph were sustained, upon much slighter foundations. It seems, by the ré« port of the commissioner, that Coutts was possessed of considerable property, not comprised in the marriage settlement; which he afterwards disposed of by his will; (but whether acquired before, or after the settlement, does not appear;) and which was neither charged in the bill, nor noticed in either of the answers; but may perhaps be liable to satisfy Greenhorn's debt. On this point, however, I give no opinion, as there may be other superior claims upon it. My opinion, upon the whole, is, that the decree be reversed, and the bill dismissed with costs; but without prejudice to any future suit the appellee may be advised to bring for the recovery of his debt, to be satisfied out of other property than that comprised in the marriage settlement. But a majority of the court being of opinion that the cause ought to be remanded for further proceedings to be had therein, the following entry (which has been seen and approved by Judge Roane)(1) is to be made.
“ The Court is of opinion that the decree is erroneous in adjudging the deed of trust, or marriage settlement in the proceedings mentioned, to be fraudulent as to the creditors of Reuben Coutts, and in ordering the slaves and personal estate mentioned in the said deed, and in the commissioner’s report of the 18th of September, 1810, to be sold to pay to the plaintiff his debt and costs, also in the proceedings mentioned; this court being of opinion that the said deed of settlement, having been bona fide made on a valuable consideration, is valid, and ought to be sustained, and that no part of the estate therein comprised is subject to the debts of the said Reuben Coutts."
Decree reversed, and cause remanded for further proceedings.

 2 Call, 183.

 1 Ves. 216. 1 Atk. 265. and Tabb and others v. Archer, 3 H. & M. 399. and the cases there cited.

 5 Ves. jun. 870. 3 Co. 80. Twyne’s Case, and Cowp. 705. Doe v. Roue ledge.

 Note. Judge Roane was one of the court which heard the cause argued, but was not present when the opinions were delivered.